# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

CEDRIC T. MONIGAN, :

    Plaintiff, :

vs. : CA 14-0010-C

CAROLYN W. COLVIN, :
Acting Commissioner of Social Security,
                                                                                                  :

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 16 & 18 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the October 9, 2014 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 16 & 18 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to hypertension, sleep apnea, posttraumatic stress disorder, major depressive disorder, GERD, degenerative disc disease of the cervical, thoracic and lumbar spines, and degenerative joint disease of the right knee. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.**
>
> **2. The claimant has not engaged in SGA since June 23, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).**
>
> **3. The claimant has the following severe impairments: hypertension; sleep apnea; post-traumatic stress disorder (PTSD); major depressive disorder; gastroesophageal reflux disease (GERD); degenerative disc disease (DDD) of the cervical, thoracic, and lumbar spine; and degenerative joint disease (DJD) of the right knee (20 CFR 404.1520(c)).**
>
> . . .
>
> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).**
>
> . . .
>
> **5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no overhead reaching; no operation of foot controls; no climbing ladders, scaffolds, or ropes; no crawling, kneeling, or work around unprotected heights and dangerous equipment; occasional climbing stairs and ramps, balancing, stooping, and crouching; no work in crowds; and no more than occasional contact with coworkers and the public, and that contact should be limited to superficial contact.**
>
> In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
>
> In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying

medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant alleges that he is disabled due to neck and lower back pain with radiculopathy, right knee pain and limited flexion, fatigue and breathing problems from sleep apnea, and social difficulties from PTSD and depression. He does no housework and cannot bend over in cramped places, squat, or run. His hands tingle, and he has lost grip strength. He can only lift five to eight pounds, sit for 40 to 60 minutes, stand for 15 to 30 minutes, and walk one to one and a half blocks. He is divorced and no longer sees eye-to-eye with his adult son, lost his wife and child due to agitation and moodiness, has no social skills, frequently gets in conflicts, sometimes has difficulty being around groups of people, becomes agitated and sweaty when outside his "comfort zone," no longer attends church, and has lost interest in attending basketball games. He takes Lortab three to four times a day, uses a knee brace that cuts off his circulation, uses a back brace that suffocates him, and lies down in a positioning device for his DDD. He goes to group and individual counseling and takes two psychotropic medications. The counseling and psychotropic medications seem to help, but the medications make him "kind of squirrely."

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The medical evidence of record documents the claimant's treatment since the alleged onset date for DJD of the right knee and DDD of the cervical, thoracic, and lumbar spine. He has complained of neck pain and tenderness, left-sided cervical radiculopathy, lower back pain, lumbar radiculopathy, right knee pain, and a sense that the right knee might "give way". However, he has also denied gait disturbance and weakness and numbness in the extremities.

3

The claimant's painful neck range of motion, somewhat decreased strength in the upper extremities, decreased deep tendon reflexes in the upper extremities, decreased sensation in the left upper extremity, absent deep tendon reflexes in the lower extremities, and decreased sensation in the left lower extremity have been noted on physical examination. However, his mostly normal neck range of motion; normal strength and muscle bulk and tone; normal range of motion and muscle strength and stability in the extremities; normal right knee range of motion; and ability to toe, heel, and tandem walk have also been noted.

On May 4, 2011, x-rays showed moderate tri[-]compartmental degenerative changes of the claimant's right knee. On May 15, 2012, x-rays of the right knee showed advanced degenerative changes with joint space narrowing and osteoarthritic spurring most pronounced at the medial joint compartment with near bone-to-bone contact. X-rays of the lumbar spine showed degenerative changes with disc space narrowing at L5-S1. On July 12, 2012, a magnetic resonance imaging scan (MRI) of the cervical spine showed mild DDD at C3-4 resulting in mild central spinal canal stenosis, mild DDD at C4-5 resulting in mild central spinal canal stenosis an mild neural foraminal narrowing, eccentric disc bulging at C5-6 resulting in mild central spinal canal stenosis and severe narrowing of the left neural foramen, and mild DDD at C6-7 resulting in mild bilateral neural foraminal narrowing. A MRI of the thoracic spine showed a small right paracentral focal disc herniation at T5-6 resulting in mild central spinal canal stenosis and T7-8 mild broad-based disc bulging resulting in mild central spinal canal stenosis. On July 24, 2012, the results of an electromyogram and nerve conduction study of the upper extremities were normal.

Prior to the alleged onset date, the claimant underwent a lumbar decompression and microdiscectomy procedure and multiple surgeries on his right knee. Since the alleged onset, his musculoskeletal impairments have been treated with physical therapy, a cervical traction unit, a spinal orthotic device, and oral muscle relaxant and pain medications.

The claimant has been treated for sleep apnea since the alleged onset date. He has complained of tiredness and fatigue due to poor sleep from sleep hypoxia. He uses a continuous positive airway pressure machine.

The claimant has been treated for hypertension since the alleged onset date. His elevated blood pressure has been noted on examination. However, his normal blood pressure has also been noted. He has been prescribed antihypertensive and calcium channel blocker medications.

The claimant has a history of GERD. On January 31, 2011, a barium swallow esophagram showed a small sliding-type hiatal hernia with a small amount of gastroesophageal reflux. Since the alleged onset date, his GERD has been noted to be stable. He takes antacid medication.

The claimant has been treated for PTSD and major depressive disorder since the alleged onset date. He has complained of depressed mood, irritability, poor sleep, and intrusive memories of combat in Iraq. His anxious mood and affect has been noted on examination. However, his adequate dress; good eye contact; fluent speech; appropriate mood, affect, and behavior; alertness; orientation; goal-directed thought process; apparent comprehension; coherent answers; and intact memory, attention, concentration, and executive functions have also been noted. He has been treated with counseling and psychotropic medications.

Residual functional capacity ordinarily is an assessment of the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, i.e., eight hours a day, for five days a week, or an equivalent work schedule. Light work involves lifting up to 20 pounds at a time, lifting or carrying objects weighing up to 10 pounds frequently, and may require a good deal of walking or standing or sitting most of the time with some pushing and pulling of arm or leg controls.

In consideration of the claimant's impairments, he is unable to perform medium or heavier work. However, the record as a whole shows that he is able to perform light work except no overhead reaching; no operation of foot controls; no climbing ladders, scaffolds, or ropes; no crawling, kneeling, or working around unprotected heights and dangerous equipment; occasional climbing stairs and ramps, balancing, stooping, and crouching; no work in crowds; and no more than occasional contact with coworkers and the public, and that contact should be limited to superficial contact. The exertional, postural, manipulative, and environmental limitations accommodate his physical impairments. The lifting and carrying limitations of light work prevent the aggravation of his DJD of the right knee, which has required several surgeries, and his hypertension, which is poorly controlled. The mental limitations accommodate his PTSD and major depressive disorder.

I cannot find the allegations to be fully credible. Except for severe narrowing of the left neural foramen at C5-6, the MRI studies have shown only mild degenerative changes to the claimant's spine. His mostly normal neck range of motion; normal strength and muscle bulk and tone; normal range of motion and muscle strength and stability in the extremities; normal right knee range of motion; and ability to toe, heel, and tandem walk have been noted on physical examination. He has access to medical care, and he has not required aggressive medical management. Although he alleges limited daily activities due to pain, he reportedly has no problems bathing, using the toilet, and feeding himself; prepare his own meals such as sandwiches and microwave meals daily; watches television; goes outside once or twice a week; can go out alone; drives; and shops in stores. He testified that he makes his own bed, does his own laundry, watches television, sometimes drives, and fishes every once in a while. His activities of daily living are consistent with the range of light work in the residual functional capacity [assessment].

As for the claimant's mental impairments, his adequate dress; good eye contact; fluent speech; appropriate mood, affect, and behavior; alertness; orientation; goal-directed thought process; apparent comprehension; coherent answers; and intact memory, attention, concentration, and executive functions have been noted on examination. As described above, he engages in some activities of daily living. He reportedly lives with his brother, spends time talking with others once or twice a week, sometimes talks with neighbors, and regularly goes to church. He testified that [he] went to a retirement party for a friend and attended a college bowl game last winter. He reportedly needs no special reminders to take care of personal needs and grooming, needs no help or reminders taking medicine, is able to handle money, and follows spoken instructions well. He testified that he can read and write okay and takes care of his own finances and schedule.

As for opinion evidence, on February 27, 2013, Sherri F. Jennings, PA, a physician assistant with the Department of Veterans Affairs (VA), examined the claimant and apparently opined that his DJD of the right knee caused only mild functional limitation and did not impact his ability to work. Although Physician Assistant Jennings is not considered to be an "acceptable medical source" for medical opinion purposes, I have considered her opinion under 20 CFR 404.1527(d) and SSR 06-03p. I give her opinion some weight. She examined the claimant, and she apparently reviewed his May 2012 x-ray results showing advanced degenerative changes. Although her opinion is consistent with her physical examination results, the longitudinal evidence of record shows that the claimant's DJD of the right knee does cause more than minimal functional limitation.

I give some weight to the State agency psychiatric consultant's mental residual functional capacity assessment and the State agency medical consultant's physical residual functional capacity assessment. The State agency consultants are familiar with Social Security law and regulations, and they generally reviewed the same evidence that I have reviewed.

On March 19, 2013, Prince C. Uzoije, M.D., a treating internist at the Franklin Primary Health Center, completed a form indicating that the claimant experiences disabling pain and is unable to sustain work activity on a regular and continuing basis. Although Dr. Uzoije is a treating source, I give his opinion little weight. He had only limited contact with the claimant during the five months that he supposedly treated him with limited diagnostic testing being performed and reviewed.

The claimant has been rated at 90 percent service-connected disability. I give little weight to the claimant's service-connected disability rating. The standard for VA disability is not the same as for disability under the Social Security Act. Moreover, the residual functional capacity in this decision of a range of light work is consistent with the longitudinal evidence of record, including the claimant's medical records from the VA.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

. . .

7. The claimant was born on July 1,1971 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

. . .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative light and unskilled occupations such as garment bundler (Dictionary of Occupational Titles (DOT) Code 920.687-190), a job with approximately 2,100 positions existing statewide and 185,000 nationally; production assembler (DOT Code 706.687-010), a job with approximately 7,300 positions existing statewide and 488,000 nationally; and poultry worker (DOT Code 525.687-074), a job with approximately 1,900 positions existing statewide and 119,000 nationally.

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the DOT.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual

functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11. The claimant has not been under a disability, as defined in the Social Security Act, from June 23, 2012, through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 24, 26-30, 30 & 31 (some internal citations omitted; emphasis in original).) The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. An ALJ, in turn,

> uses a five-step sequential evaluation to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Security*, 457 Fed.Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted).

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

If a plaintiff proves that he cannot do his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Id.*; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied*, 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, but importantly, although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light, unskilled jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by

---

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Monigan asserts two reasons why the Commissioner's decision to deny him benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ failed to give proper weight to a Disability Rating Decision of the Department of Veterans Affairs and did not explain her reason for not doing so; and (2) the ALJ gave an insufficient reason for according the opinion of treating physician Dr. Prince Uzoije little weight. The Court will address each issue in turn.

**A.** **Disability Rating Decision of the Department of Veterans Affairs.** Monigan initially contends that the ALJ erred in failing to explain her reasons for not affording proper (that is, great) weight to the Disability Rating Decision of the Department of Veterans Affairs. There can be no question but that on June 25, 2012, the Department of Veterans Affairs verified for Monigan that its official records reflected he was "rated at 90% for a service-connected disability." (Tr. 241.) The rated disabilities consisted of the following:

> CHRONIC ADJUSTMENT DISORDER (30%)
> SLEEP APNEA SYNDROME[] (30%)
> NEOPLASM, BENIGN, GENITOURINARY (20%)
> DEGENERATIVE ARTHRITIS OF THE SPINE (20%)
> LIMITED FLEXION OF KNEE (10%)
> PARALYSIS OF SCIATIC NERVE (10%)
> LIMITED FLEXION OF KNEE (10%)
> DEGENERATIVE ARTHRITIS OF THE SPINE (10%)
> LIMITED FLEXION OF FOREARM (10%)
> HIATAL HERNIA (10%)
> LIMITED MOTION OF ANKLE (10%)
> LIMITED MOTION OF ANKLE (10%)

(*See, e.g.,* Tr. 263.)

The Eleventh Circuit has recognized that although a disability rating decision by the Veterans Administration is not "binding" on the ALJ, such a rating is entitled to

10

"'great weight[.]'" *Pearson v. Astrue,* 271 Fed.Appx. 979, 981 (11th Cir. Apr. 1, 2008), citing *Brady v. Heckler,* 724 F.2d 914, 921 (11th Cir. 1984); *see also Kemp v. Astrue,* 308 Fed.Appx. 423, 426 (11th Cir. Jan. 26, 2009) ("'A VA rating is certainly not binding on the Secretary, but it is evidence that should be considered and is entitled to great weight.'"); *see Rodems ex rel. Rodems v. Colvin,* 2014 WL 795966, *4 (N.D. Ala. Feb. 27, 2014) ("An ALJ is obligated to consider a disability rating assigned by another agency, not just the medical records behind the rating, but there is no obligation to agree with the rating."). Moreover, as noted in *Kemp, supra,* "[t]he ALJ must 'state specifically the weight accorded to each item of evidence and why he reached that decision.'" 308 Fed.Appx. at 426, quoting *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981).

In this case, the ALJ specifically identified the weight she was according the VA disability rating—little—and explained that she reached that conclusion not only because "[t]he standard for VA disability is not the same as for disability under the Social Security Act[,]"[4] but also because her RFC assessment of light work was "consistent with the longitudinal evidence of record, including the [] medical records from the VA[.]" (Tr. 30.) Therefore, contrary to plaintiff's argument, the ALJ specifically explained her reasons for not affording the VA disability rating "great weight." In addition, the ALJ in this case continuously referenced the VA records (*see* Tr. 27-30)— upon which the VA disability rating was based—in the course of making her own determination that Monigan was not disabled, *see Adams v. Commissioner of Social*

---

[4] This is an absolutely correct statement of law. *Compare Kemp, supra,* 308 Fed.Appx. at 426 ("The SSA regulations specify that a decision by any non-governmental or governmental agency about whether an individual is disabled is based on its own rules and does not constitute a SSA decision about whether an individual is disabled." (citation omitted)) *with Pearson, supra,* 271 Fed.Appx. at 981 ("The record establishes that the administrative law judge considered the rating in his decision and correctly explained that a claimant had to satisfy a more stringent standard to be found disabled under the Social Security Act." (citations omitted)).

11

*Security*, 542 Fed.Appx. 854, 857 (11th Cir. Oct. 24, 2013). And because nothing in the VA records (*see, e.g.,* Tr. 242-879 & 902-943)—including the disability rating[5]—or the remaining credible evidence of record (*see, e.g.,* Tr. 103-107) is contrary to the ALJ's determination that claimant retains the RFC to perform a limited range of light work, the Court cannot find that the ALJ erred in failing to give a more detailed explanation for according the VA disability rating little weight.

**B.      The ALJ Did Not Have the Opinions of Plaintiff's Treating Physician, Dr. Prince Uzoije, Which Should Have Been Given Substantial Weight**. In his brief, plaintiff argued that his case was due to be remanded based upon new and material evidence, that is, the March 19, 2013 form completed by Dr. Prince Uzoije, a treating physician. (*See* Doc. 13, at 3.) Because the defendant made clear in her brief in opposition that the ALJ considered the form completed by Dr. Uzoije in her decision (*compare* Doc. 14, at 10 *with* Tr. 30), the plaintiff modified her attack on the ALJ's decision in court to contend that the ALJ failed to set forth an explicit and adequate reason for rejecting the opinions Uzoije expressed in the form he completed on March 19, 2013.

The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good

---

[5]      This rating makes no reference to claimant's ability to perform work-related activity or the impact plaintiff's various recognized impairments would have on his abilities to perform work-related activities. (*Compare* Tr. 241 *with* Tr. 263.)

cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004) (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Soc. Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam). Most relevant to this case, an ALJ's articulation of reasons for rejecting a treating source's RFC and pain assessments must be supported by substantial evidence. *See id.* ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Security Admin.,* 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

In this case, the ALJ specifically determined that "little" weight was due to be afforded the findings by Dr. Uzoije reflected on a March 19, 2013 form that physical activity greatly increases Monigan's symptoms and causes distraction from (or total abandonment) of tasks and that due to ongoing radiculopathy and pain Monigan cannot "engage in any form of gainful employment on a repetitive, competitive and productive basis over an eight hour day, forty hours a work, without missing more than

2 days of work per month or experiencing interruptions to his[] work routine due to symptoms of his[] . . . medical problems[.]" (*Compare* Tr. 30 *with* Tr. 239 & 884.) The ALJ explained that Dr. Uzoije's findings were entitled to only little weight in light of his "limited contact with the claimant during the five months that he supposedly treated [claimant] with limited diagnostic testing being performed and reviewed." (Tr. 30.) The undersigned construes the ALJ's comments as an implicit finding that Dr. Uzoije's opinions were conclusory and inconsistent with the doctor's own medical records.

A review of the transcript reflects that Dr. Uzoije's office saw plaintiff five times from October 22, 2012 through March 19, 2013, with Dr. Uzoije being the provider of medical services on only two of those visits. (*See* Tr. 885-899.) On October 22, 2012, Tamekia Cunningham, a registered nurse, saw Monigan, who presented to Franklin Primary Health Center with no current "problems" but in search of a new primary care physician. (Tr. 897-899.) On November 30, 2012, Dr. Uzoije examined Monigan and specifically noted on musculoskeletal examination that there was "[n]ormal range of motion, muscle strength, and stability in all extremities with *no pain* on inspection." (Tr. 896 (emphasis supplied); *see also id.* at 884-885.) On January 8, 2013, Nurse Cunningham treated Monigan for a rash (Tr. 891-893), and, on February 7, 2013, Nurse Cunningham again saw plaintiff for his rash and hypertension (Tr. 888-890). And, finally, Dr. Uzoije's examination of plaintiff on March 19, 2013 noted only left knee tenderness. (Tr. 887.) Because Dr. Uzoije noted only left knee "tenderness" on one of the two occasions he treated plaintiff but, otherwise, found no evidence or pain or radiculopathy, the undersigned finds that the ALJ was absolutely correct in giving little weight to Dr. Uzoije's March 19, 2013 findings due to his "limited contact with the claimant during the five months that he supposedly treated [claimant] with limited diagnostic testing being performed and reviewed." (Tr. 30.) Dr. Uzoije's objective clinical findings are

14

inconsistent with the findings set forth on the form he completed on March 19, 2013; therefore, the Court finds the ALJ's articulated reason for giving little weight to Dr. Uzoije's March 19, 2013 findings supported by substantial evidence.

In light of the foregoing, the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Security*, 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Security*, 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 17th day of October, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**